UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/9/2022

HILARY A. BEST,

                                 Plaintiff,

               -against-

JAMES MERCHANT, *New York City Correction Officer, Shield #8237, et. al.*,

                           Defendants.

------------------------------------------------------------- X

1:21-cv-779-GHW

MEMORANDUM OPINION &
ORDER

GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

Plaintiff Hilary Best alleges that, while he was incarcerated on Rikers Island in May 2012, Defendant New York City Department of Correction Officer James Merchant allowed several inmates to assault him in the common area. Out of desperation to prevent the assault, and hoping that a response team would be summoned, Mr. Best threw warm soup onto Officer Merchant. Though the fight was stopped, Officer Merchant responded by processing an infraction against Mr. Best—which was subsequently nullified—and then by initiating a criminal proceeding. In August 2012, Defendant Investigator Benjamin Fontanez arrested Mr. Best for assault in the third degree and harassment in the second degree. Mr. Best's criminal case was dismissed in October 2018.

Plaintiff, proceeding *pro se*, brings this case under 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution against Defendants Merchant and Fontanez (together, the "Individual Defendants"), and against the City of New York for municipal liability. For the following reasons, the Court grants Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) as to the claims against Defendant Fontanez and the City of New York, but denies Defendants' motion as to Plaintiff's malicious prosecution claim against Defendant Merchant.

## II.     BACKGROUND[1]

On or about May 19, 2012, while Plaintiff was incarcerated on Rikers Island, Plaintiff alleges that Defendant Merchant stood by as a group of inmates assaulted Plaintiff in the common area of Plaintiff's housing unit.  Dkt. No. 58 ("SAC") at 4.  In desperation, Plaintiff threw warm soup on Merchant, hoping that action would trigger a response team to remove Plaintiff from the housing unit.  *Id.*  The plan worked, and Plaintiff was removed.  *Id.*

Merchant proceeded to "falsify" a complaint against Plaintiff related to the soup-throwing incident.  *Id.*  Because of that complaint, Plaintiff was subjected to 30 days in "punitive segregation." *Id.*  But that punishment that was subsequently nullified in a state-court Article 78 proceeding.  *Id.* In retaliation for the nullification, Plaintiff alleges that Merchant proceeded to "falsify a criminal complaint against" him.  *Id.*  That complaint "failed to mention that the soup was thrown on [Merchant] in response to [Merchant's] malfeasance in failing to take appropriate action to secure Plaintiff's safety and wellbeing" at Rikers.  Dkt. No. 78 ("Pl's Opp.") ¶ 7.  Defendant Fontanez then arrested Plaintiff pursuant to that criminal complaint, and Plaintiff was subsequently detained on Rikers Island for several additional months.  SAC at 4.  Plaintiff contends that the charges in the complaint were not supported by any evidence and that Officer Merchant never verified the complaint under oath as required by law; as a result, he alleges, the criminal court never had jurisdiction over him pursuant to the criminal complaint.  *Id.* at 5.

Though "[e]very trick in the book was attempted" to convict Plaintiff of the criminal charge, the Bronx County Criminal Court ordered Defendant New York City Department of Corrections

---

[1] The facts are drawn primarily from Plaintiff's Second Amended Complaint ("SAC").  Dkt. No. 58.  Some allegations are also drawn from Plaintiff's "pro se opposition to the motion to dismiss," Dkt. No. 78, "which we may consider in resolving this" motion.  *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 120 n.1 (2d Cir. 2016).  For this motion, the Court must accept as true the facts alleged in the amended complaint.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

(the "DOC") to release Plaintiff on his own recognizance on or about November 28, 2012. *Id.* at 4. But the DOC "defied the release order" and detained Plaintiff until December 4, 2012. *Id.* At that time, Plaintiff was taken from Rikers Island by Defendants Jane and John Does, who transferred Plaintiff to Creedmoor Psychiatric Center pursuant to what Plaintiff labels a "fake transfer order." *Id.* At Creedmoor, Plaintiff was detained for three additional months until he was able to obtain a release by court order. *Id.* at 4–5.

The criminal complaint against Plaintiff was dismissed on October 2, 2018. *Id.* at 5; *see* Dkt. No. 65 Ex. B (dismissal order).[2] Plaintiff filed his first complaint in this case on January 28, 2021. Dkt. No. 2. He amended that complaint on May 7, 2021, Dkt. No. 11, and did so again on June 16, 2022, Dkt. No. 58. Defendants filed a motion to dismiss Plaintiff's SAC under Federal Rule of Civil Procedure 12(b)(6) on July 29, 2022. Dkt. No. 64; Dkt. No. 67 ("Defs' Mem."). They construe Plaintiff's complaint to raise false arrest, false imprisonment, and malicious prosecution claims. *See generally* Defs' Mem; *see* also Pl's Opp. ¶ 22 (clarifying that Plaintiff is bringing no state-law claims). Defendants argue that Plaintiff's false arrest and false imprisonment claims are barred by the applicable statutes of limitations. *Id.* at 5–7, 12. They also contend that Plaintiff's false arrest and malicious prosecution claims should be dismissed because there was sufficient probable cause for Plaintiff's arrest, *id.* at 7–10, 17–18, and that Defendants Merchant and Fontanez are entitled to qualified immunity with respect to those claims in any event, *id.* at 10–12, 18–19. Defendants additionally argue that the DOC should be dismissed from the action as a non-suable entity. *Id.* at 20–21.

---

[2] The Court takes judicial notice of the statements within this Dismissal Order, Dkt. No. 65 Ex. B, to establish the fact of the dismissal. *See* Fed. R. Evid. 201 (b) (courts may judicially notice facts not subject to reasonable dispute because their "accuracy cannot reasonably be questioned"); *In re Olympia Off. LLC*, 585 B.R. 661, 667 (E.D.N.Y. 2018) ("[A] court may take judicial notice of a document filed in another court to establish the fact of such a document, but cannot take judicial notice of the factual findings of another court [for their truth].").

Plaintiff opposed Defendants' motion to dismiss on October 25, 2022. *See generally* Pl's Opp. He argued that his claims are timely and that no probable cause existed for his prosecution by Merchant and Fontanez. *See id.* ¶¶ 8, 15. Defendants filed their Reply on November 9, 2022. Dkt. No. 81 ("Reply").

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Because Mr. Best is proceeding *pro se*, the Court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). "The rule favoring liberal construction of *pro se* submissions," moreover, "is especially applicable to civil rights claims." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 120 (2d Cir. 2016) (quoting *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003)). That liberal standard notwithstanding, "*pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) (quoting *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995)); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.") (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## IV.    DISCUSSION

### a.   Mr. Best's False Arrest and False Imprisonment Claims Are Untimely

Mr. Best's false arrest and false imprisonment claims both must be dismissed because neither was brought within the applicable statute of limitations.  Plaintiff brings his claims under 42 U.S.C. § 1983, *see* Pl's Opp. ¶ 20, which "provides a cause of action to individuals who have been deprived by government officials acting under color of law 'of any rights, privileges, or immunities secured by the Constitution.'"  *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (quoting 42 U.S.C § 1983).  Because section 1983 does not have its own statute of limitations, "courts apply the statute of limitations for personal injury actions under state law."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  As Mr. Best's alleged claims arose in New York, the statute of limitations for his claims is three years.  *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).

The statute of limitations for both false imprisonment and false arrest claims begins to run when the alleged victim is held pursuant to legal process.  *See Wallace v. Kato*, 549 U.S. 384, 397 (2007) (finding that limitations "begin to run against an action for false imprisonment when the alleged false imprisonment ends" and that "a false imprisonment ends once the victim becomes held *pursuant to* [legal] *process*—when, for example, he is bound over by a magistrate or arraigned on charges"); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("A cause of action for false arrest accrues at the time of detention.").[3]  Mr. Best was arrested for the offenses related his soup-throwing on August 21, 2012.  Defs' Mem at 6.  And legal proceedings concerning that arrest commenced shortly

---

[3] Plaintiff disputes this rule, arguing that because his arrest and arraignment were not themselves lawful, his false arrest and imprisonment claims did not toll until his prior case's dismissal on October 2, 2018.  Pl's Opp. ¶ 15.  That is inaccurate:  The Supreme Court made clear in *Wallace* that false imprisonment and false arrest are characterized by "detention *without legal process*" at all, whereas unlawful detention of the sort that Mr. Best alleges "forms part of the damages of the 'entirely distinct' tort of malicious prosecution."  549 U.S. at 389–90 (emphasis in original) (quoting W. Keeton *et al.*, Prosser & Keeton on Law of Torts § 119, 885–86 (5th ed. 1984)); *see also Watson*, 865 F.3d at 130–31 (describing this distinction).  For that reason, Mr. Best's malicious prosecution claim is not time-barred—but his false arrest and false imprisonment claims are.

thereafter.[4]  Accordingly, the statute of limitations for Mr. Best's false imprisonment and false arrest claims expired on or around August 2015.  He did not, however, bring this action including his false imprisonment and false arrest claims until January 28, 2021—over five years after the statutes of limitations for those claims had run.  *See* Dkt. No. 2.  Those claims are accordingly untimely.

Nor is Mr. Best entitled to equitable tolling of the statute of limitations.[5]  "Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order to prevent inequity."  *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (internal citation omitted).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) (quoting *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017)).  And while *pro se* filings are held to more lenient standards, absent additional justification for equitable tolling, such tolling cannot "be premised on [a plaintiff's] lack of education, pro se status, or ignorance of the right to bring a claim."  *Watson*, 865 F.3d at 133.

---

[4] Defendants do not state the day that Mr. Best was arraigned.  But many courts in this circuit have, in analogous circumstances, "presume[d] that the date of accrual occurs within several days of the arrest."  *Sherman v. Holecek*, No. 3:16-cv-1342, 2018 WL 4119119, at *4 (N.D.N.Y. Aug. 29, 2018) (citing *Walker v. Vill. of Freeport*, No. 15-cv-4646, 2016 WL 4133137, at *11 (E.D.N.Y. June 13, 2016); *Forbes v. City of New York*, No. 15-cv-3458, 2016 WL 6269602, at *3 (S.D.N.Y. Oct. 26, 2016); *Stewart v. City of New York*, No. 06-cv-15490, 2008 WL 1699797, at *6 n.4 (S.D.N.Y. Apr. 9, 2008)).  The Court, moreover, does not read Plaintiff's complaint or opposition to assert that no arraignment occurred; rather, the only reasonable inference that can be drawn from the record is that there was an arraignment but that Plaintiff believes that it was unlawful.  *See* Pl's Opp. ¶ 15 (admitting that "a false arrest claim tolls at the time of process or arraignment," but disputing that there any *lawful* arraignment occurred); *see also* Dkt. No. 83 (stressing his position that "legal process," [n]ot illegal process," starts the statute of limitations for section 1983 claims).  Mr. Best's complaint also makes clear that other criminal proceedings related to this arrest were occurring in late 2012 and that the legal process was underway in that case by that time, thereby initiating the statute of limitations.  *See* SAC at 4 (describing legal proceedings in November and December 2012 concerning this charge).  Accordingly, the Court can safely conclude that the legal process connected to Mr. Best's prior criminal proceeding started well before January 2018, the earliest date that would make Plaintiff's false arrest and false imprisonment claims in this case timely.

[5] Plaintiff does not directly make an equitable tolling argument.  In light of Plaintiff's *pro se* status, however, the Court will nonetheless analyze the question of equitable tolling given the duty to construe Plaintiff's submissions liberally and interpret them "to raise the strongest arguments that they suggest."  *Triestman*, 470 F.3d at 474.

Here, even construed liberally and in the light most favorable to Mr. Best, the case's record does not reflect that he has been diligently pursuing his rights or that any extraordinary circumstances caused him to assert his claims after the applicable statute of limitations expired. He mentions no attempt to file these claims within the applicable limitations period, nor does he mention obstacles that would have prevented such attempts. *See generally* SAC; Pl's Opp. So Mr. Best is not entitled to equitable tolling, he did not file his false arrest and false imprisonment claims within the governing statutes of limitations, and those claims will be dismissed.

### b. Plaintiff Has Stated a Plausible Malicious Prosecution Claim Against Officer Merchant But Not Against Offer Fontanez

#### i. Legal Standard

"To state a 42 U.S.C. § 1983 claim for malicious prosecution, a plaintiff must plead both 'a violation of his rights under the Fourth Amendment' and 'the elements of a malicious prosecution claim under state law.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). "Under New York law, a malicious-prosecution claim requires a plaintiff to [plead] '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions.'" *Id.* at 163–64 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 94–95 (2d Cir. 2013)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (internal quotation omitted). The test for probable cause is an objective one and "depends upon the

reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).

"Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury," as "[t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989). "It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." *Fabrikant v. French*, 691 F.3d 193, 214–15 (2d Cir. 2012) (quoting *Krause*, 887 at 371); *accord Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."). An arresting officer thus does not have a "duty . . . to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003).

At the same time, however, the Second Circuit has recognized that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Manganiello*, 612 F.3d at 161 (internal quotation marks omitted). Relatedly, "a police officer's awareness of the facts supporting a defense can eliminate probable cause," and an officer may not "deliberately disregard facts known to him which establish justification." *Washington v. Napolitano*, 29 F.4th 93, 107 (2d Cir. 2022) (quoting *Jocks*, 316 F.3d at 135–36); *see also Panetta*, 460 F.3d at 395 ("[A]n officer may not disregard plainly exculpatory evidence.").

"[E]ven where even when probable cause is lacking, a police officer is entitled to qualified immunity if '(1) her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for her to believe

that her actions were lawful at the time of the challenged act.'" *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022) (quoting *Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014)). "In the context of a malicious prosecution claim, an officer's decision to initiate a prosecution 'is objectively reasonable . . . if officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)).

But where defendants choose "to press their qualified immunity defense at the pleadings stage," they "must face the 'more stringent standard applicable to this procedural route.'" *Sabir v. Williams*, 52 F.4th 51, 63 (2d Cir. 2022) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). As the Second Circuit has put it, when raising qualified immunity as a defense to support a motion to dismiss,

> the facts supporting the defense [must] appear on the face of the complaint," [*McKenna*, 386 F.3d at 436], or in its attachments and documents incorporated by reference, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). On a motion to dismiss, the plaintiffs are "entitled to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.
>
> For this reason, we have explained that "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Chamberlain* [*v. City of White Plains*], 960 F.3d [100,] 111 [(2d Cir. 2020)]. Although it is possible for a qualified immunity defense to succeed on a motion to dismiss, *see Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020), such a defense "faces a formidable hurdle . . . and is usually not successful," *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) (internal quotation marks omitted); *see also Chamberlain*, 960 F.3d at 110 ("[A]s a general rule, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion.").

*Sabir*, 52 F.4th at 63–64 (all alterations except for second, fourth, fifth, and sixth in original).

Finally, actual "malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Manganiello*, 612 F.3d at 163 (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)). Lack of probable cause and actual malice are related because a "lack of probable cause generally creates an inference of malice." *Id.* (quoting *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003)).

### ii.  Application

Plaintiff has plausibly stated each of the requisite elements of a malicious prosecution claim against Officer Merchant, and so his malicious prosecution claim may proceed against him. But because the facts pleaded in Plaintiff's complaint and opposition indicate that Defendant Fontanez had probable cause to arrest Plaintiff, Plaintiff's malicious prosecution claim against Officer Fontanez will be dismissed.

To state malicious prosecution claim based on events in New York under section 1983, a plaintiff must plead (1) a violation of his Fourth Amendment rights, (2) the initiation or continuation of a criminal proceeding against him, (3) the termination of that proceeding in his favor, (4) lack of probable cause for commencing the proceeding, and (5) actual malice as a motivation for the defendants' actions. *Dettelis*, 919 F.3d at 163–64.  Plaintiff has sufficiently (and undisputedly) pleaded several of these necessary elements against both Defendants Fontanez and Merchant. Specifically, he has (1) pleaded the initiation of a criminal proceeding, (2) that terminated in his favor, and (3) pursuant to which his Fourth Amendment rights were violated.  *See* SAC at 4 (alleging that Defendants Merchant and Fontanez initiated a criminal proceeding against him that led to his detention for several months and further detention later, but that the criminal proceeding was later dismissed); *see also Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.").

That leaves only the issues of probable cause and actual malice.  Both officers argue that they had at least arguable probable cause to commence the underlying criminal proceeding against Plaintiff, and that Plaintiff has not satisfactorily pleaded actual malice.  Defs' Mem. at 17–19.  The

Court disagrees with Defendant Merchant but agrees with Defendant Fontanez; accordingly, the malicious prosecution claim may proceed as to the former but not as to the latter.

### 1.    Defendant Merchant

Plaintiff has sufficiently pleaded that Defendant Merchant lacked probable cause and acted with actual malice when he initiated criminal proceedings against Plaintiff.  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Dufort*, 874 F.3d at 348.  Here, as pleaded, Defendant Merchant "attempted to stand by and allow several inmates to group assault [Plaintiff]" in a housing common area on Rikers.  SAC at 4.  In "desperation to prevent the assault," Plaintiff threw warm soup on Defendant Merchant.  *Id.*  Some time later, Defendant Merchant "falsified a criminal complaint" against Plaintiff that described the soup throwing, *id.*, but "failed to mention that the soup was thrown on him in response to his malfeasance in failing to take appropriate action to secure Plaintiff's safety and wellbeing," Pl's Opp. ¶ 7.[6]

From these facts, Plaintiff has plausibly alleged that Defendant Merchant lacked probable cause to file the criminal complaint against him.  Defendants rightly note that "so long as there was probable cause for any offense, Plaintiff's . . . claim is foreclosed," regardless of whether Plaintiff was actually charged with or arrested for any specific offense.  Defs' Mem. at 9–10 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  Defendants cite four crimes that Defendants Merchant and Fontanez could have had probable cause to believe Plaintiff had committed:  (1) assault in the third degree, N.Y. Penal Law § 120.00, (2) harassment in the second degree, *id.* § 240.26, (3) attempted

---

[6] The filing of a criminal complaint that leads to an arrest and prosecution qualifies as an initiation of a criminal proceeding for purposes of a malicious prosecution claim.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Stampf v. Long Island R. Co.*, 761 F.3d 192, 198–99 (2d Cir. 2014).

assault in the third degree, *id.* § 110/120.00, and (4) assaulting an individual while incarcerated in a correctional facility, *id.* § 120.05.[7]

The parties dispute whether Defendant Merchant had probable cause to believe that each element of any of these offenses was satisfied. *Compare, e.g.,* Defs' Mem. at 9 (arguing that the act of throwing soup provided probable cause), *with* Pl's Opp. ¶¶ 9–10 (Plaintiff disputing the soup's temperature and arguing that he did not have the requisite intent to injure or harass Defendant Merchant when he threw the soup). But as the complaint is pleaded, the primary problem for Officer Merchant is not establishing the elements of any offense but rather his failure to consider applicable defenses. As the Second Circuit has held, "under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause"—specifically, awareness of facts supporting "exculpatory defense[s]" that "negate the existence of a crime." *Jocks,* 316 F.3d at 135.

Here, according to Plaintiff, Defendant Merchant intentionally stood by watching Plaintiff get assaulted by other inmates when, out of "desperation" to get Defendant Merchant to do something, Plaintiff threw warm soup on him. SAC at 4. If this is true—as, at this stage, the Court must assume—then Plaintiff's decision to throw the soup was supported by the exculpatory defense of justification. *See* N.Y. Penal Law § 35.05 ("[C]onduct which would otherwise constitute an offense is justifiable and not criminal when . . . [s]uch conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."); *see Jocks,* 316 F.3d at 135 ("Justification, including both emergency

---

[7] Plaintiff was charged with and arrested for purported commission of the first two of these offenses. *See* Pl's Opp. at 9.

measures and self-defense, is an exculpatory defense.").  Defendant Merchant was not entitled to ignore the facts in support of that defense that Plaintiff alleges he was aware of—namely, that Plaintiff was being beaten while Officer Merchant intentionally stood by.  SAC at 4; *see Panetta*, 460 F.3d at 395 ("[A]n officer may not disregard plainly exculpatory evidence.").  So Plaintiff has pleaded that Defendant Merchant did not have probable cause to charge him with any crime.

Defendant Merchant's invocation of qualified immunity does not alter this conclusion.  An officer is entitled to qualified immunity if "it was objectively reasonable for [him] to believe that her actions were lawful at the time of the challenged act."  *Cornelio*, 32 F.4th at 179 (internal citation omitted).  "In the context of a malicious prosecution claim, an officer's decision to initiate a prosecution 'is objectively reasonable . . . if officers of reasonable competence could disagree on whether the probable cause test was met.'"  *Id.* (quoting *Jenkins*, 478 F.3d at 87).  But Plaintiff has plausibly pleaded that Defendant Merchant has failed to meet even that reduced probable cause standard.  That is because on a motion to dismiss, a plaintiff is "entitled to all reasonable inferences from the facts alleged, not only those that support [his] claim, but also those that defeat the [qualified] immunity defense."  *Sabir*, 52 F.4th at 63 (quoting *McKenna*, 386 F.3d at 436).  As pleaded, and making inferences in his favor, Plaintiff has alleged that Defendant Merchant knew that Plaintiff was being beaten, made the conscious choice not to intervene, and that Plaintiff had no other option to get intervention other than throwing soup on Defendant Merchant.  *See* SAC at 4.  On those facts, no reasonable officer could conclude that Plaintiff's actions were not justified, and so no reasonable officer could conclude that there was probable cause to charge Plaintiff with a crime.  *See* N.Y. Penal Law § 35.05.  And as Defendant Merchant cannot submit competing facts at this stage of the proceedings, his qualified immunity defense cannot succeed.  *See also Chamberlain*, 960 F.3d at 111 ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch.").

13

Finally, for substantially the same reasons that Plaintiff has plausibly pleaded that Defendant Merchant lacked probable cause to initiate proceedings against him, Plaintiff has plausibly pleaded actual malice.  As the Second Circuit has noted, a "lack of probable cause generally creates an inference of malice." *Manganiello*, 612 F.3d at 163 (internal citation omitted).  Plaintiff has directly alleged, moreover, that Defendant Merchant initiated criminal proceedings against him not because he had probable cause to believe that a crime had been committed, but rather as retaliation after Plaintiff succeeded in nullifying an allegedly falsified infraction report concerning the soup-throwing incident.  SAC at 4.  Again taking Plaintiff's complaint as true, Plaintiff has thus pleaded that "the prosecution complained of was undertaken from improper and wrongful motives." *Manganiello*, 612 F.3d at 163.  Accordingly, Plaintiff has properly stated all elements of a malicious prosecution claim against Defendant Merchant, and his claim may proceed against that defendant.

### 2.   Defendant Fontanez

By contrast, Plaintiff has failed to plausibly state that Defendant Fontanez lacked probable cause when he arrested Plaintiff.  In making probable cause determinations, police officers are "entitled to rely on the allegations of fellow police officers." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *see also Dufort*, 874 F.3d at 348.  Here, Plaintiff alleges Defendant Merchant's "falsified . . . criminal complaint" caused Defendant Fontanez to arrest him.  SAC at 4; *see also* Pl's Opp. ¶ 14 (alleging that "Defendant Fontanez arrested Plaintiff . . . solely upon the allegations of his co-worker, Defendant Merchant.").  And Defendant Merchant's complaint, on Plaintiff's telling, described Plaintiff as having thrown soup on Defendant Merchant but "failed to mention that the soup was thrown on him in response to his malfeasance in failing to take appropriate action to secure Plaintiff's safety and wellbeing."  Pl's Opp. ¶ 7; *see* SAC at 4 (Plaintiff alleging that he only threw the soup to try to get Defendant Merchant's attention while Merchant stood by and allowed inmates to assault Plaintiff).

In other words, as pleaded, Plaintiff's complaint alleges that Defendant Fontanez knew that Plaintiff had intentionally thrown soup on Defendant Merchant but did *not* know about a possible justification defense.  On those facts, a reasonable officer would have had probable cause to arrest Plaintiff for the commission of several crimes.  *See, e.g.*, N.Y. Penal Law § 120.00 (assault in the third degree, under which a person is guilty when "(1) with intent to cause physical injury to another person, he causes such injury to such person . . ."); *id.* § 240.26 (harassment in the second degree, under which a person is guilty "when, with intent to harass, annoy, or alarm another person: (1) he or she strikes, shoves, kicks or otherwise subjects such other person to physical contact . . .").

Once Defendant Fontanez had probable cause based on a source on which he was entitled to rely—Defendant Merchant's allegations—he was not required to further investigate the complaint.  "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty."  *Fabrikant*, 691 F.3d at 214 (quoting *Panetta*, 460 F.3d at 395).  And a valid probable cause determination based on facts known to the officer is not invalidated because "more thorough or more probing investigation might have cast doubt upon the situation."  *Id.* at 214–15 (quoting *Krause*, 887 F.2d at 371).  Nor can the Court presume, pursuant to the "collective knowledge doctrine," that facts known to Defendant Merchant were known to Defendant Fontanez.  That doctrine, which presumes that facts *probative* of probable cause known by one officer are known by all, "has traditionally been applied to *assist* officers in establishing probable cause" and "*cannot* be used to impute to an officer facts known to some [other] members of the police force which exonerate an arrestee."  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis in original and internal quotation marks omitted).  And as discussed, Plaintiff's pleadings do not allege that Defendant Merchant told Defendant Fontanez about the exonerating circumstances in which Plaintiff threw the soup—instead, they appear to allege the opposite.  *See* Pl's Opp. ¶ 14.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Frost*, 980 F.3d at 242 (quoting *Stansbury*, 721 F.3d at 94–95). Because Defendant Fontanez had probable cause to arrest Plaintiff, Plaintiff's malicious prosecution claim may not proceed against as against Defendant Fontanez.

### c.  Plaintiff's Other Allegations are Insufficiently Pleaded

Plaintiff has also failed to state a claim against any city entity. His complaint lists the "New York City Department of Correction" as a named defendant. SAC at 1. But the DOC is a non-suable entity. *See Wray v. City of New York*, 340 F. Supp. 2d 291, 303 (E.D.N.Y. 2004) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law" (quoting N.Y.C. Charter § 396)). The Court accordingly grants Plaintiff's request to substitute the City of New York for the DOC as a defendant. Pl's Opp. ¶ 30; *see, e.g., Bey v. Adams*, No. 22-cv-2593, 2022 WL 1091620, at *2 (S.D.N.Y. Apr. 8, 2022) (doing the same); Fed. R. Civ. P. 21.

But Plaintiff has failed to state any plausible claim against the City. Under 42 U.S.C. § 1983, municipalities are "not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

Here, Plaintiff merely alleges that the DOC "practices an unwritten policy of allowing its employees to commit and facilitate unlawful acts against detainees, such as assault and homicide, including illegal transfers . . . to state mental facilities." Pl's Opp. ¶ 23. These boilerplate, conclusory allegations, without any factual enhancement, do not satisfy the standard for pleading a

municipal liability claim.  *See, e.g., Cuevas v. City of New York*, No. 07-cv-4169, 2009 WL 4773033, at *3
("Plaintiff's boilerplate allegations against the City of New York satisfy neither the elements [for
municipal liability], nor the pleading requirements set forth in *Iqbal*.").  Accordingly, Plaintiff's
complaint against the City of New York is dismissed.

**V.    LEAVE TO AMEND**

"It is the usual practice upon granting a motion to dismiss to allow leave to replead."  *Cortec
Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The
court should freely give leave [to amend] when justice so requires.").  However, leave to amend may
be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the
opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation
omitted).

Here, granting Plaintiff leave to amend his false arrest and false imprisonment claims would
be futile because the three-year statute of limitations on those claims has run.  *See, e.g., Ellis v.
Wilkinson*, 81 F. Supp. 3d 229, 239 (E.D.N.Y. 2015) ("Amendment would likely be futile if, for
example, the claims the plaintiff sought to add would be barred by the applicable statute of
limitations." (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000))); *Vargas v. Ciarletta,* No. 09-
cv-8981, 2010 WL 4447636, at *1 (S.D.N.Y. Nov. 4, 2010) ("[I]f the claims the plaintiff seeks to add
would be barred by the applicable statute of limitations, amendment would be futile and leave to
amend should be denied.").  Accordingly, Plaintiff may not amend his complaint to include those
claims.

The Court grants Plaintiff leave, however, to replead (a) his malicious prosecution claim
against Defendant Fontanez and (b) his municipal liability claim against the City of New York.  The
Court cannot conclude that Plaintiff could not amend those claims in a manner sufficient to
withstand a motion to dismiss.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir.

2002) (noting that amendment is futile if "the proposed claim could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)").  And while Plaintiff has twice amended his claim before, he has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Should Plaintiff choose to file an amended complaint, he must do so no later than twenty-one days from the date of this order.  Plaintiff is advised that any amended complaint must comply with the Court's guidance in this section of the order.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART. Plaintiff is granted leave to amend his complaint consistent with the Court's instructions no later than twenty-one days from the date of this order.

The Clerk of Court is directed to amend the caption of this action to substitute the New York City Department of Correction with the City of New York, to terminate the motion pending at Dkt. No. 64, and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:  December 9, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge