USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/12/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                        :

HILARY A. BEST,                    :

                        :

                 Plaintiff,    :             1:21-cv-779-GHW

                        :

        -v-               :      MEMORANDUM OPINION &
                        :             ORDER

JAMES MERCHANT, *et al.*,    :

                        :

            Defendants.  :

                        :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

On May 19, 2012, Plaintiff Hilary Best—then a pretrial detainee at Rikers Island—threw a container of soup at Defendant James Merchant, an officer with the New York City Department of Corrections ("DOC"). Officer Merchant experienced pain, soreness, and marks on his skin consistent with a burn. Mr. Best was charged with assault in the third degree and harassment in the second degree.

On November 28, 2012, he appeared in court in connection with those charges. He was ordered released on his own recognizance. Defendant DOC Captain Stephanie Negron took him back to Rikers Island because Mr. Best was to be sent to a facility to undergo mental health treatment pursuant to a different set of criminal charges. Accordingly, on December 4, 2012, Defendant DOC Officer Steven Acosta transported him to a psychiatric facility. In October 2018, the assault and harassment charges were dismissed.

In January 2021, Mr. Best, proceeding *pro se*, commenced this action, asserting violations of his civil rights under 42 U.S.C. § 1983. In his operative complaint, he asserted a claim of malicious prosecution against Defendants Negron, Acosta, and Merchant. Defendants moved for summary judgment on that claim. Because Defendants Negron and Acosta were not personally involved in the initiation of the relevant criminal prosecution and because Defendant Merchant had actual or

arguable probable cause to initiate that prosecution against Mr. Best, the Court GRANTS

Defendants summary judgment on the malicious prosecution claims.

## I.    BACKGROUND

### A.    Factual Background[1]

On May 19, 2012, Mr. Best was a pretrial detainee at Rikers Island.  *See* Dkt. No. 230-1

("Best Dep.") 17:18–25.  In the early afternoon, he was in the common area of his housing unit.  *Id..*

He sought to use the law library and asked a corrections officer when he would be able to do so.  *See*

*id.* 18:1–4.  Displeased by that officer's response, Mr. Best grew "frustrate[d]" and "agitated" with

her.  *Id.* 34:3–20.  Around this time, a group of approximately ten inmates began to move closer to

where he was standing in the common area.  *Id.* 21:14–16.  Mr. Best interpreted their advance as an

impending assault.  *Id.* 24:3–8.

At around that time, Officer Merchant entered the common area.  Dkt. No. 230-3

("Merchant Dep.") 19:7–21.  While Officer Merchant stood about ten feet away, Mr. Best requested

assistance from him.  Best Dep. 18:12–15; 25:4–7.  Officer Merchant observed Mr. Best "yelling and

screaming" and acting belligerently.  *See* Dkt. No. 230-4 ("B Form").  He directed Mr. Best to "calm

down" and "face the wall"  Dkt. No. 230-2 ("Use of Force Report").  Mr. Best responded by saying

"f**k you, I don't have to talk to you."  *Id.*  Seconds later, Mr. Best threw a container of soup at

Officer Merchant.  *Id.*; *see also* Best Dep. 18:16–19.  The parties dispute if the soup was "hot," *see* Use

of Force Report, or "warm,"  Dkt. No. 232 ("Best Aff.") ¶¶ 4–5.  They do not dispute that the soup

struck Officer Merchant.  *See* Use of Force Report.  They also do not dispute that, in the immediate

aftermath of the incident, Officer Merchant experienced pain and noticed marks on his skin

consistent with a burn.  *See* Merchant Dep. 20:22–25, 21:2–6; *see also* Use of Force Report.

---

[1] The following facts are draw from Defendants' Local Civil Rule 56.1 Statements and the record evidence submitted alongside their motion.  All facts are undisputed unless otherwise noted, and all factual inferences are drawn in Plaintiff's favor.

To subdue Mr. Best, who had just cursed at and hurt him, Officer Merchant dispersed a chemical agent at Mr. Best. *See* B Form. Mr. Best "fell to the floor," and Officer Merchant restrained him. *See id.* Mr. Best was removed from the area. Best Dep. 40:10–13. There were no further interactions between Mr. Best and Officer Merchant. *Id.* 42:10–15.

Mr. Best received a disciplinary infraction for the May 19, 2012 assault. Best Dep. 40:17–19. He appealed his infraction to the superintendent of the facility. *Id.* 44:3–9. The superintendent denied that appeal. *Id.* 44:10–15. He then brought an Article 78 proceeding in New York state court. *Id.* 45:1–5. In June 2012, the court presiding over the Article 78 proceeding nullified his infraction. *Id.* 46:12–20. Officer Merchant was not present at the hearing held in connection with his application. *Id.* 48:3–4.

On August 21, 2012, Mr. Best was arrested for the assault on Officer Merchant. *See* Dk. No. 230-5 ("Arrest Report"). He was still incarcerated at Rikers Island for another offense at the time of his arrest for the new assault. *Id.* He was charged with one count of assault in the third degree, in violation of New York Penal Law § 120.00(1), and one count of harassment in the second degree, in violation of New York Penal Law § 240.26(1) (collectively, the "Charges"). Dkt. No. 230-6 ("Fontenez Decl."). In his supporting declaration, DOC Investigator Benjamin Fontenez affirmed that Officer Merchant informed him of the conduct underlying the Charges. *Id.* Officer Merchant informed Investigator Fontenez that Mr. Best "threw a bowl containing soup at [him ,] striking [him] in the right hand and chest." *Id.* He also informed Investigator Fontenez that, "as a result of [Mr. Best's] conduct, [he] suffered pain and soreness to his chest and right hand as well experienced annoyance, alarm and fear for his physical safety." Officer Merchant also separately filed supporting materials. Merchant Dep. 33:10–25. Mr. Best was arraigned on the Charges on August 27, 2012. Dkt. No. 230-7 ("Nov. Tr.") 3:20–22.

On November 28, 2012, Mr. Best appeared in Bronx County criminal court in connection

3

with the Charges.  *See* Nov. Tr.  The presiding judge, Justice Miram Best, ordered Mr. Best released on his own recognizance.  *Id.* 4:20.

But Mr. Best was not released from DOC custody on that day.  At the time Justice Best released him on his own recognizance for the crimes charged in the Charges, there were a different set of criminal charges against him pending in New York County criminal court (the "Unrelated Charges.").  *See* Dkt. No. 230-8 ("Final Order").  In connection with the Unrelated Charges, he had undergone psychiatric testing pursuant to New York Criminal Procedure Law § 730 (the "730 Exam").  *See* Dkt. No. 230-12 ("Oct. 2018 Tr.") 3:17–23.  Based on the results of the 730 Exam, he had been found unfit to stand trial on the Unrelated Charges.  *Id.*  Although the court in which the Charges were pending had declined to adopt the findings of the 730 Exam, *id.,* he remained subject to a final order of observation (the "Final Order") as a result of his serious mental health issues, *see* Final Order.  The Final Order required that Mr. Best be released to the care of a designated facility to receive mental health treatment.  *Id.*  The Final Order was effective starting September 7, 2012. *Id.*  As a result, Mr. Best could not be released to the public on November 28, 2012.  *See id.*

Accordingly, Captain Negron, who was the DOC holding supervisor on November 28, 2012, informed Mr. Best that he was to return to Rikers Island.  Best Dep. 59:3–7.  She returned him to Rikers Island that same day.  *Id.*

On December 4, 2012, corrections officers, including Officer Acosta, transported Mr. Best to Creedmoor Psychiatric Center ("Creedmoor").  Dkt. No. 231-1 ("R56.1 Stmt.") ¶ 15.; *see also* Final Order (identifying Creedmoor as the facility to which Mr. Best was to be released).  Upon his transfer to Creedmoor, Mr. Best no longer in DOC custody.  Dkt. No. 230-10.

On October 2, 2018, Mr. Best appeared in court on the Charges.  Oct. 2018 Tr.  The People of the State of New York moved to dismiss the Charges in the interest of justice.  *Id.* 3:14–16.  The People argued that several factors weighed in favor of dismissal, including the fact that six years had

elapsed since the Charges had been brought, the fact that Mr. Best had rejected offers to plead to a noncriminal violation, judicial economy, and the court's decision to not adopt the findings of the 730 Exam. *Id.* 3:17–25, 4:1–12.  The People also argued that even if Mr. Best were to be found guilty, the harshest punishment he could receive was time served. *Id.* 4:2–6.  The presiding judge granted the motion and dismissed the Charges. *Id.* 5:14–22.

### B.     Procedural History

On January 28, 2021, Mr. Best, proceeding *pro se*, initiated this action by filing his first complaint.  Dkt. No. 2.  He also requested leave to proceed *in forma pauperis.*  Dkt. No. 1.  Then-Chief Judge Coleen McMahon, to whom this case was assigned, granted that request.  Dkt. No. 3.  In his initial complaint, Mr. Best asserted violations of his constitutional rights and brought claims of false imprisonment, false arrest, and malicious prosecution under 42 U.S.C. § 1983 against various defendants. *See* Dkt. No. 2.  On June 16, 2022, Mr. Best filed a second amended complaint (the "SAC").  Dkt. No. 58.  On February 22, 2022, Defendants Fontenez and Merchant filed a motion to dismiss the SAC.  Dkt. No. 64.

On December 9, 2022, the Court granted Defendants' motion to dismiss the SAC in part. Dkt. No. 84 ("MTD Opp.").  The Court granted the motion as it related to Mr. Best's claims of false arrest and false imprisonment because it concluded that those claims were untimely.  MTD Opp. at 5–6.  The Court granted the motion to dismiss the malicious prosecution claim against Investigator Fontenez. *Id.* at 14–15.  However, the Court denied the motion to dismiss the malicious prosecution claim against Officer Merchant. *Id.* at 7–14.  The Court concluded that Mr. Best had plausibly pleaded that Officer Merchant lacked probable cause to initiate the prosecution and that the allegations in the complaint did not establish Officer Merchant's invocation of the affirmative defense of qualified immunity. *Id.* at 12–14.  In particular, the Court concluded that Mr. Best had adequately pleaded that Officer Merchant had consciously ignored the fact that Mr. Best had thrown

the soup so that Officer Merchant would intervene to prevent an in-progress assault. *Id.* at 12–13.

On April 22, 2024, Mr. Best filed his fifth amended complaint, which is the operative complaint in this matter. Dkt. No. 159 ("FAC"). He asserted a malicious prosecution claim against Officer Merchant, Officer Acosta, and Captain Negron.[2] *Id.* at 5. He also reprised his claims of unlawful detention and false arrest. *Id.* In particular, Mr. Best asserted a claim of false arrest and unlawful detention against Captain Negron for transferring him back to Rikers Island and for allowing him to remain there after Justice Best ordered him released on his own recognizance. *Id.* He also raised claims of unlawful detention and false arrest against Officer Acosta for transporting Mr. Best to Creedmoor on December 4, 2012. *Id.* at 6.

On October 6, 2025, Defendants Acosta, Merchant, and Negron filed a motion for summary judgment on the claims raised in the operative complaint. *See* Dkt. No. 231 ("Mem."); *see also* R56.1 Stmt.[3] Defendants argued that Officer Merchant was entitled to summary judgment because there was no genuine dispute of material fact that he had probable cause to bring each of the Charges. Mem. at 5–8. Defendants also argued Captain Negron and Officer Acosta were entitled to summary judgment because there was no dispute that neither was personally involved in any prosecution of Mr. Best. *Id.* at 8–9. Defendants also argued that, in the alternative, Officer Merchant was entitled to qualified immunity because there was no genuine dispute of material fact that there was at least arguable probable cause for Mr. Best's prosecution. *Id.* at 9–11. Next, Defendants argued that any claims of false arrest and unlawful imprisonment were time-barred. *Id.* at 12–13. Defendants also argued that Mr. Best's unlawful detention claims failed on the merits because he lawfully remained in

---

[2] Although he also asserted this claim against David Hayes, a retired corrections officer, Mr. Best did not serve Mr. Hayes within the ninety days of filing the complaint as required by Federal Rule of Civil Procedure 4(m). Accordingly, the Court dismissed all claims against Mr. Hayes on January 7, 2025. Dkt. No. 196.

[3] Defendants did not file copies of the depositions of Mr. Best and Officer Merchant on the public docket. *See* Dkt. Nos. 230-1, 230-3. Defendants submitted these documents only in hardcopy "due to file size." *Id.* This does not comport with counsel's obligations under Local Civil Rule 56.1 As described below, Defendants are ordered to file copies of those depositions on the public docket of this case.

DOC custody from November 28, 2012 to December 4, 2012 pursuant to the Final Order. *Id.* at 13–16.

On October 30, 2025, Plaintiff filed his opposition. Dkt. No. 233 ("Opp."). Mr. Best argued that Officer Merchant did not have probable cause to initiate a prosecution for assault because Officer Merchant was not injured by the soup. *Id.* at 2. Mr. Best argued that malice may be inferred from the absence of probable cause. *Id.* He also argued that Officer Merchant was not entitled to qualified immunity because "[n]o reasonable officer could believe probable cause existed for assault where no injury occurred." *Id.* at 3. Mr. Best also raised a new claim of First Amendment retaliation against Officer Merchant for the latter's decision to bring criminal charges after Mr. Best prevailed in an Article 78 proceeding. *Id.*

On December 19, 2025, Defendants filed a reply in support of their motion for summary judgment. Dkt. No. 236 ("Reply"). Defendants first argued that the Court should deem the facts as stated in their Local Rule 56.1 statement as admitted because Mr. Best did not controvert those facts with citations to the record. *Id.* at 2–3. Next, Defendants argued that there was probable cause to bring an assault charge because Officer Merchant's injury met the standard for physical injury under the applicable sections of New York Penal Law. *Id.* at 3–4. Next, Defendants argued that Plaintiff's retaliation claim was procedurally barred because it was not raised in the operative complaint. *Id.* at 5. They argued that the retaliation claim was also meritless because there was probable cause to initiate the prosecution. *Id.* Defendants reprised their argument that even if actual probable cause did not exist, Officer Merchant was entitled to summary judgment because the undisputed facts demonstrated that it was objectively reasonable to arrest Mr. Best. *Id.* at 6–7. Finally, Defendants argued that they were entitled to summary judgment on the claim of malicious prosecution as it related to the harassment charge and on the claims of unlawful imprisonment and false arrest because Mr. Best did not address those arguments in his opposition. *Id.* at 7–8.

The motion was fully submitted when Mr. Best filed a sur-reply on January 8, 2026.  Dkt. No. 237 ("Sur-reply").  First, Mr. Best argued that the Court should not deem the facts in Defendants' Rule 56.1 statement as admitted because Defendants must still meet their burden under Rule 56 to support their factual assertions with citations to the record.  *Id.* at 2–3.  Mr. Best argued that probable cause for assault was lacking because Officer Merchant's injury did not meet the standard for physical injury under relevant New York criminal statute.  *Id.* at 3–4.  He also argued that "at a minimum," whether Officer Merchant suffered physical injury was a "classic jury question" for which summary judgment was inappropriate.  *Id.* at 4.  Next, he clarified that because, he argued, Officer Merchant's initiation of the prosecution was "retaliatory," there at least "triable issue" as to whether there was malice to support this malicious prosecution claim.  *Id.* at 4–5.  Mr. Best then reprised his argument that Officer Merchant was not entitled to qualified immunity.  *Id.* at 5.  Finally, Mr. Best argued that his malicious prosecution claim had not been abandoned because it had been "consistently pled, survived multiple motions to dismissed, and [was] squarely addressed in the summary judgment record."  *Id.* at 5–6.

## II.    LEGAL STANDARD

Defendants are entitled to summary judgment on a claim if they can "show[] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are

irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323–24). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). A plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Kilian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. IBM Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Circ. 1996)). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one[] side or the other but whether a fair-

9

minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 553 (quoting *Anderson*, 477 U.S. at 252); see also *Battino v. Cornial Fifth Ave., LLC*, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) ("To avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a . . . jury's resolution of the parties' differing versions of the truth." (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006))).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must construe that party's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (internal quotation marks and citations omitted). "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014); *accord Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). Proceeding *pro se*, however, "does not . . . relieve [a *pro se* party opposing summary judgment] from the usual requirements of" opposing such a motion. *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-cv-8594, 2003 WL 102853 *5 (S.D.N.Y. Jan. 9, 2003).

"If the moving party seeks summary judgment against a *pro se* litigant, the moving party is also required to notify the *pro se* litigant of the requirements of Rule 56 and Local Civil Rule 56.1." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see* Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment Pursuant to Local Rule 56.2, Dkt. No. 229. "*Pro se* litigants are then not excused from meeting the requirements of Local Rule 56.1." *Wali*, 678 F. Supp 2d at 178 (citing *Teddy Bear Co. v. 1–800–BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004)). Local Rule 56.1(b) requires that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of

10

the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). Additionally, each statement of fact in the non-moving party's response must "be followed by citation to evidence." Local Civ. R. 56.1(c).

"[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244. Thus, "if a defendant asserts in his Rule 56.1 statement a material fact on which his summary judgment motion depends but supports it with a wholly unsupportive record citation, a plaintiff's failure to controvert the statement [does not] absolve[] the district court of even checking whether the citation supports the assertion. Such an approach would derogate the truth-finding functions of the judicial process by substituting convenience for facts." *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003). "[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockerfeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). Considering Plaintiff's *pro se* status, the Court has independently reviewed the complete record determine if Plaintiff's assertions are substantiated by competent evidence.

## III.    DISCUSSION

### A. Federal Malicious Prosecution Claim

All defendants must be granted summary judgment on Mr. Best's malicious prosecution claim. The undisputed facts in the record establish that Defendants Negron or Acosta were not personally involved in the prosecution of the Charges. The "personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quotation marks omitted)). A defendant may be "personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways." *Williams v. Smith*, 781 F.2d 319, 323–324 (2d Cir. 1986) (citations omitted). A defendant may be found liable if they "directly participated in the infraction . . . ." *Id.* If they were a "supervisory official," they may also be found liable if "after learning of the violation through a report or appeal, [they] may have failed to remedy the wrong" or if "he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Id.*

Captain Negron and Officer Acosta were not involved in the prosecution of the Charges. Captain Negron did interact with Mr. Best following his release on his own recognizance on those charges. Best Dep. 59:3–7. However, the conduct of which Mr. Best complains—returning Mr. Best to Rikers Island—was connected to the Unrelated Charges. *See* **Final Order**. Similarly, Officer Acosta was not involved in the prosecution of the Charges. He transported Mr. Best to Creedmoor pursuant to the Final Order, which also related to the Unrelated Charges.

Although Officer Merchant was personally involved in the prosecution the Charges, he is entitled to summary judgment on Mr. Best's malicious prosecution claim because there is no genuine dispute of material fact that he had probable cause—or least arguable probable cause—to initiate the prosecution of those charges. "To prevail on a malicious prosecution claim under New York law, a plaintiff must show '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] and (4) actual malice.'" *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (quoting *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021). "Section 1983 requires these same four elements, . . . but it also imposes an additional

one: '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Id.* (quoting *Rohman v. New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000)). "[A] claim for malicious prosecution can lie against an officer who 'play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Id.* at 158 n.21 (quoting *Bermudez v. City of New York*, 790 F.3d 368, 376 (2d Cir. 2015)). "[I]n the Fourth Amendment malicious prosecution context, probable cause must support each charge brought by the prosecution." *Id.* at 158 (citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562–63 (2024)).

"Actual probable cause is a complete defense to federal false arrest claims." *Sacaza v. City of New York*, 169 F.4th 363, 370 (2d Cir. 2026) (internal quotations omitted).[4] "The same is true for malicious prosecution claims, unless intervening facts discovered between the arrest and the initiation of prosecution dissipate probable cause." *Id.* (internal quotations and citations omitted). "'To determine whether probable cause existed, we consider the totality of the circumstances, reviewing plainly exculpatory evidence alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest.'" *Id.* (quoting *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022)). The district court must "focus [its] analysis on the 'facts available to the officer at the time of arrest and immediately before it.' . . . 'Law enforcement officers have probable cause to arrest when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Triolo*, 24 F.4th at 106).

---

[4] In his opposition, Mr. Best argues that Officer Merchant's decision to initiate the prosecution was retaliation for his exercise of his First Amendment rights. Opp. at 3. To the extent that this portion of his opposition can be construed as a request to amend his complaint to include a First Amendment retaliation claim, that request is denied both because it is untimely and because the claim would be futile. "The existence of probable cause . . . defeat[s] a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence [him]." *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012).

"[U]nder some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause"—specifically, awareness of facts supporting "exculpatory defense[s]" that "negate the existence of a crime." *Jocks*, 316 F.3d at 135. While "an officer may not disregard plainly exculpatory evidence," "'the fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985)) (internal ellipses omitted). "Probable cause does not require absolute certainty . . . . Courts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003), then *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)) (internal citations omitted).

On the undisputed facts in the record, probable cause supported both Charges. "To determine whether there was probable cause to prosecute the [two] charges . . . the Court must consider the elements of each offense." *Smith v. City of New York*, No. 1:18-CV-05079, 2021 WL 4267525, at *12 (S.D.N.Y. Sept. 20, 2021). Mr. Best was charged with assault in the third degree under New York Penal Law § 120.00(1) and with harassment in the second degree under New York Penal law § 240.26(1). "A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ." N.Y. Penal Law § 120.00(1). Physical injury includes "impairment of physical condition or substantial pain." *Id.* § 10.00(9). "'Substantial pain' cannot be defined precisely, but it can be said that it is more than slight or trivial pain. Pain need not, however, be severe or intense to be substantial." *People v. Chiddick*, 8 N.Y.3d 445, 447 (2007). "In defining 'physical injury' as consisting of 'substantial pain,' the Legislature intended to set a threshold of something more than a mere technical battery." *People v. Henderson*, 92 N.Y.2d 677, 680 (1999). Thus, "petty slaps, shoves, kicks

14

and the like delivered out of hostility, meanness and similar motives, are not within the definition of the statute." *Id.* (internal citations and quotations omitted).

As it relates to the second Charge, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact . . . ." N.Y. Penal Law § 240.26(1). "The crux of section 240.26(1) is the element of physical contact:  actual, attempted or threatened." *People v. Bartkow*, 96 N.Y.2d 770, 772 (2001).

Officer Merchant has met his burden to show that there is an absence of a genuine issue of material fact that there was probable cause to charge Mr. Best with assault in the third degree. Officer Merchant was injured as a result of the soup being thrown at him.  R56.1 Stmt. ¶¶ 7–8.  As described in Officer Merchant's deposition testimony and in the contemporaneous documentary evidence, the injuries were painful and resulted in skin discoloration—consistent with his testimony that he had been burned.[5]  Merchant Dep. ¶¶ 25:21–24; *see also* Use of Force Rep. at 2 (identifying injuries as "[b]urn marks on [Officer Merchant's] chest and hand along with irritated skin").  A law enforcement officer of reasonable caution could believe that this type of physical injury rises above "a mere technical battery" to constitute physical injury within the meaning of the assault statute. *Henderson*, 92 N.Y.2d at 680.

A law enforcement officer of reasonable caution could also believe that Mr. Best intended to cause injury.  Mr. Best was "frustrate[d]" with a different corrections officer and generally "agitated" in the moments before he threw the soup.  Best Dep. 34:12–20.  Officer Merchant entered the situation and concluded that Mr. Best was an agitated and erratic inmate who was angry at prison

---

[5] Mr. Best argues that Officer Merchant has not met his burden because has not produced medical documentation of his injury.  *See* Opp. at 2.  The New York Court of Appeals has not required such specific proof to sustain a prosecution for third degree assault.  *See Chiddick*, 8 N.Y.3d at 447 (describing the medical treatment as one of several "factual aspects of a case that can be examined to decide whether enough pain was shown to support a finding of substantiality").

staff.  *See* Use of Force Report.  That initial evaluation was supported by Mr. Best's offensive use of foul language in response to Officer Merchant's order to calm down.  *Id.*  Mr. Best threw the injurious soup at Officer Merchant seconds after his response.  *See id.*  That the soup was thrown at a corrections officer after Mr. Best was observed directing his ire towards two corrections officers supports a belief that Mr. Best intended to cause injury.

For similar reasons, there is no genuine dispute of material fact that there was probable cause to prosecute Mr. Best for second degree harassment.  Mr. Best subjected Officer Merchant to physical contact; Mr. Best threw soup at him, and the soup struck him.  And, for the same reason that as there was probable cause to believe that Mr. Best had an intent to injure, an officer of reasonable caution could believe that the throwing of soup was done with an "intent to harass, annoy or alarm."  N.Y. Penal Law § 240.26(1).

Mr. Best has not come forward with facts that show that there is a genuine dispute as to the existence of probable cause for the Charges.  Mr. Best argues that there was no probable cause to charge him with third degree assault for three reasons:  first, because Officer Merchant was not injured; second, because Officer Merchant ignored exculpatory evidence; and third, because Officer Merchant initiated the prosecution despite being aware that Mr. Best had prevailed at the Article 78 proceeding.  The Court addresses these arguments in turn.

Mr. Best has not presented evidence that would create a genuine dispute of material fact as to whether Officer Merchant's injury supported probable cause.  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  Here, the fact that would affect the outcome of the malicious prosecution claim is whether Officer Merchant's injury was sufficiently serious such that an officer of reasonable caution would be warranted in the belief that there was probable cause to initiate a prosecution for third-degree assault.  In his attempt to create a dispute about this fact, Mr. Best affirms that the container of soup was "warm, not hot" and

opines that it could not have burned Officer Merchant.  Best. Aff. ¶¶ 4–5.  But he does not present facts that would rebut the objective evidence Defendants proffer to describe Officer Merchant's injury.  Defendants proffered contemporaneous documentary evidence that—immediately following the assault—Officer Merchant experienced skin irritation and observed marks consistent with a burn "on [his] chest and hand . . . ."  *See* Use of Force Report at 2.  And Officer Merchant informed Investigator Fontenez that he "suffered pain and soreness to his chest and right hand."  *See* Fontenez Decl.  Mr. Best does not dispute the facts supported by this evidence; he only offers his opinion about the temperature of the soup.  These undisputed facts establish that Officer Merchant was reasonable in his belief that the type of injury he suffered was sufficient to establish probable cause to initiate a prosecution for third degree assault.  Mr. Best's evaluation of the soup's inability to cause a burn amounts to "unsubstantiated speculation," insufficient to defeat a motion for summary judgment in the face of concrete facts.  *Fujitsu Ltd.*, 247 F.3d at 428.

Mr. Best also does not come forward with specific facts sufficient to show there is a genuine dispute as to whether Officer Merchant ignored plainly exculpatory evidence at the time of arrest.  "Under New York law, defenses are either exculpatory (eliminating culpability) or mitigating (reducing culpability)."  *Jocks*, 316 F.3d at 135 (citing *People v. Valles*, 62 N.Y.2d 36, 38–39 (1984)).  "Justification, including both emergency measures and self-defense, is an exculpatory defense."  *Id.* (citing *Valles*, 62 N.Y.2d at 38–39).  "[C]onduct which would otherwise constitute an offense is justifiable and not criminal when . . . [s]uch conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."  N.Y. Penal Law § 35.05(2).

On this record, the Court cannot conclude that a trial is necessary to resolve whether Officer Merchant disregarded plainly exculpatory evidence that the throwing of the soup was necessary to avoid an imminent injury. Before Mr. Best threw the soup, he observed several inmates were moving toward him. Best Dep. 24:6–8. He interpreted that as an imminent assault. *Id.* Mr. Best then asked Officer Merchant to "call for assistance." *Id.* 25:10–11. At the moment Mr. Best called for assistance, the room was not very loud, and Officer Merchant stood approximately ten feet away, and another corrections officer was nearby. *Id.* 25:3–15. In context, these facts do not evince the existence of "plainly exculpatory" evidence. No reasonable jury would find justification in these facts to excuse Mr. Best's assault on a corrections officer. While Mr. Best, whose mental health was poor at this time, perceived a threat, two corrections officers were in the vicinity. And fear of an imminent threat from an inmate does not justify an assault on an officer who was not himself a threat. *See People v. Craig*, 78 N.Y.2d 616, 623 (1991) (holding that Section 35.05 does not justify "conduct for which there is a reasonable, legal alternative course of action"); *see also* Best Dep. 26:8–20 (testimony that Mr. Best did not consider "run[ning] towards" Officer Merchant before deciding to throw the soup). "[T]he totality of the circumstances" warrant a law enforcement officer of reasonable caution in the belief that Mr. Best's threw the soup to cause injury to corrections officers rather than to seek their assistance. *Panetta*, 460 F.3d at 395; *see also Thomas v. Genova*, No. 23-7452, 2025 WL 583182, at *2 (2d Cir. Feb. 24, 2025) (summary order).

Finally, Mr. Best does not proffer any evidence that Officer Merchant became aware of facts between the time of Mr. Best's arrest and the initiation of the prosecution that would dissipate probable cause for the Charges. "Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996) (citation and internal quotations omitted). "In order for probable cause to dissipate, the groundless nature of the charges

18

must be made apparent by the discovery of some intervening fact." *Id.* (citing *Callan v. State*, 73 N.Y.2d 731 (1988)).  "[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause."  *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983).  Mr. Best argues that Officer Merchant did not have probable cause to initiate a prosecution because his infraction had been previously nullified in an Article 78 proceeding.  Best Aff. ¶ 9.

Mr. Best does not proffer any evidence that Officer Merchant was aware that Mr. Best had even initiated an Article 78 proceeding, much less that it had concluded in Mr. Best's favor.  The only evidence in the record suggests that Officer Merchant was not aware of the proceeding or its result.  Officer Merchant was not present at a hearing held in connection with the proceeding.  Best Dep. 48:3–4.  And there were no interactions between Officer Merchant and Mr. Best in the time between the Article 78 decision and the initiation of the prosecution.  *Id.* 48:12–20.[6]  Thus, even drawing all factual inferences in Mr. Best's favor, Mr. Best has not established that there is genuine dispute of fact that Officer Merchant became aware of facts after the arrest that would have vitiated probable cause.  Accordingly, Officer Merchant is entitled to summary judgment because he had probable cause to initiate a prosecution on the Charges.

Even if Officer Merchant did not have actual probable cause to initiate the prosecution, he is entitled summary judgment on the malicious prosecution claim for the separate reason that he is entitled to qualified immunity.  "In certain circumstances, qualified immunity shields government actors . . . from liability for actions taken in their official capacity—providing 'ample protection to all but the plainly incompetent or those who knowingly violate the law.'"  *Sacaza*, 169 F.4th at 369 (2d Cir. 2026) (quoting *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017)).  "To determine whether a police officer is entitled to qualified immunity, courts consider:  (1) whether the facts

---

[6] Nor is there evidence of the basis for the decision in the Article 78 proceeding.  The decision may not have rested upon a substantive evaluation of the merits of the disciplinary sanction.

evince that the police officer violated a statutory or constitutional right; and (2) whether the right was clearly established at the time of the challenged conduct." *Id.* at 369–70 (internal quotations omitted). In the context of malicious prosecution, "qualified immunity applies where it was objectively reasonable to believe there was probable cause to make the arrest, or there was arguable probable cause—that is, where reasonable . . . officers could disagree as to the existence of probable cause." *Id.* at 370. "Therefore, it follows that to dissipate arguable probable cause, the circumstances or facts . . . need to be such that no reasonable police officer could find that probable cause existed." *See id* (citing *Triolo*, 24 F.4th at 108). "The party asserting a qualified immunity defense bears the burden of showing actual probable cause or arguable probable cause." *Id.* at 370.

Even if Officer Merchant did not have actual probable cause to initiate the prosecution, he had arguable probable cause. Based on the undisputed facts in the record, a reasonable officer could find that probable cause existed to initiate the prosecution for the Charges. Officer Merchant entered a room and observed an agitated inmate who was "yelling and screaming." B Form. Mr. Best tried to get his assistance. Officer Merchant—seeking to de-escalate the situation—ordered Mr. Best to calm down. Mr. Best's verbal response evinced both his continued agitation and antagonism towards corrections officers. Seconds later, Officer Merchant was hit with soup and suffered a painful injury. Even if another officer in Officer Merchant's position might have interpreted Mr. Best's agitated conduct as a sign that Mr. Best needed assistance, it was objectively reasonable for Officer Merchant—having just been hurt by Mr. Best—to instead interpret it as evidence of Mr. Best's desire to harm the facility's staff. Therefore, even assuming that Officer Merchant did not have probable cause to arrest him, he is entitled to qualified immunity because reasonable officers could disagree about the existence of probable cause. Accordingly, the Court must grant Officer Merchant summary judgment on Mr. Best's claim of malicious prosecution.

### B. False Arrest and False Imprisonment

To the extent that Mr. Best's fifth amended complaint may be construed to raise a claims false arrest and false imprisonment, the Court does not address those claims here. The Court dismissed those claims because the statute of limitations had run. MTD Op. at 17. The Court concluded that Mr. Best was not entitled the equitable tolling. *Id.* Because repleading would have been futile, the Court denied Mr. Best leave to amend those claims. *Id.* Because the false arrest and false imprisonment claims are no longer part of this action, the Court does not address the parties' arguments raised in connection with Defendants' motion for summary judgment.

### C. Possible State Law Claims

The Court grants Defendants summary judgment on any state law claim of malicious prosecution the fifth amended complaint may be read to suggest and declines to exercise supplemental jurisdiction over any other state law claim the fifth amended complaint may be read to suggest. The liberal construction afforded to submissions by *pro se* litigants requires consideration of potential state law claims, even if the plaintiff does not specifically assert state law claims. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017). Though Mr. Best only raised a federal malicious prosecution claim, the Court also evaluates the motion for summary judgment on a state law malicious prosecution claim.

Defendants entitled to summary judgment on Mr. Best's state law claim of malicious prosecution. Just as for the federal claims, Defendants Negron and Agosta are entitled to summary judgment because the undisputed facts in the record do not demonstrate that they "commenced or continued the underlying criminal proceeding." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 760–61 (2016). As it relates to Officer Merchant, claims of malicious prosecution arising under New York state law require that the plaintiff show "the absence of probable cause for the criminal proceeding.'" *Alexander*, 132 F.4th at 158. The "probable cause" standard is the same under New

21

York state and federal law.  *See Boyd*, 336 F.3d at 76 ("Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." (citing *Colon,* 60 N.Y.2d at 82)); *see also Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 39–40 (2d Cir. 1985) (describing the "reasonable cause" standard in the context of a lawful warrantless arrest under New York Criminal Procedure Law § 140.10 as "the equivalent of probable cause").  Thus, for the same reason that Officer Merchant is entitled to the probable cause defense to Mr. Best's Section 1983 claim, he is also entitled to that defense on the equivalent state law claim.

Just as Officer Merchant is entitled to summary judgment on Mr. Best's Section 1983 claim because he is entitled to qualified immunity, he is entitled to summary judgment on the state law claim under the equivalent New York common-law doctrine.  *See Jenkins v. City of New York*, 478 F.3d 76, 86 & n.8 (2d Cir. 2007) ("'Qualified immunity' protects an official from liability under federal causes of action but is not generally understood to protect officials from claims based on state law.  Nevertheless, a similar doctrine exists under New York common-law.").  Accordingly, the Court grants Defendants summary judgment on Mr. Best's state law claim of malicious prosecution.

The Court declines to exercise supplemental jurisdiction over any other state law claims that the fifth amended complaint may be read to suggest.  The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)).  Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, subsection (3) applies because the Court has dismissed all of the claims over which it had original jurisdiction. Therefore, the Court may exercise its discretion to decline supplemental jurisdiction over any remaining state law claims.

Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Gibbs*, 383 U.S. at 726). Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs* . . . : economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). However, "the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine— judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *In re Merrill Lynch*, 154 F.3d at 61 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

This is the usual case. The Court has evaluated the values articulated in *Gibbs* in the context of this case and has concluded that they weigh in favor of the Court declining supplemental jurisdiction. Thus, the Court declines to exercise supplemental jurisdiction over any other state law claims that Mr. Best's fifth amended complaint may be read to suggest. Accordingly, the Court dismisses those state law claims without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

Defendants are ordered to file electronic copies of the depositions of Mr. Best and Officer Merchant on the docket of this case no later than one week following the date of this order. The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Court certifies, pursuant to 20 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is directed to mail a copy of this order to Plaintiff, to terminate all pending motions, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: May 12, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge